UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TORRANCE JACKSON,

                                    Plaintiff,

v.                                                                    5:20-CV-1215
                                                                      (GTS/ML)
THE CITY OF SYRACUSE; ANTHONY FIORINI,
Police Officer, in his individual capacity; MAMOUN
ABRAHAM, Police Officer, in his individual capacity;
WILLIAM KITTLE, Police Officer, in his individual
Capacity; and DAVID PROCCOPIO, Police Lieutenant,
in his individual capacity,

                                    Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

LAW OFFICE OF FRED LICHTMACHER P.C.      FRED B. LICHTMACHER, ESQ.
  Counsel for Plaintiff
116 West 23rd Street, Suite 500
New York, NY 10011

HON. KRISTEN E. SMITH                              PATRICK R. BLOOD, ESQ.
Corporation Counsel for City of Syracuse        Assist. Corporation Counsel
  Counsel for Defendants
233 East Washington Street                         TODD M. LONG, ESQ.
City Hall, Room 300                                   Assist. Corporation Counsel
Syracuse, NY 13202

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this civil rights action filed by Torrance Jackson

("Plaintiff") against the City of Syracuse, police officers Anthony Fiorini, Mamoun Abraham,

and William Kittle, and police lieutenant David Proccopio ("Defendants"), is Defendants'

motion for judgment on pleadings pursuant to Fed. R. Civ. P. 12(c).  (Dkt. No. 13.)  For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Claims

Generally, in his Complaint, Plaintiff asserts three claims: (1) a claim that Defendants Fiorini, Abraham, and Kittle (hereinafter "Defendant Police Officers") and Defendant Procopio violated Plaintiff's rights under the Fourth and Fourteenth Amendments by using excessive force against him during a traffic stop and while at a hospital on October 16, 2018, in the City of Syracuse, New York; (2) a claim that the Defendant Police Officers violated Plaintiff's rights under the Fourth Amendment by failing to intervene in the aforementioned uses of excessive force during a traffic stop and while at a hospital; and (3) a claim that Defendant City of Syracuse violated Plaintiff's rights under the Fourth and Fourteenth Amendments by causing him to be subjected to the aforementioned uses of excessive force.  (Dkt. No. 1 [Plf.'s Compl.].)

Specifically, in support of his third claim, Plaintiff alleges that Defendant City of Syracuse maintained a *de facto* policy of deliberate indifference by turning a blind eye to the practice of the Syracuse Police Department ("SPD") of using excessive force against minorities and other citizens, making unnecessary false arrests of minorities and other citizens, and denying fair trials to minorities and other citizens.  (*Id.* at ¶¶ 51-56.)  Plaintiff further alleges (upon information and belief) that Defendant City of Syracuse tolerated such practices for approximately four years (from 2012 through September of 2016) when it failed to discipline members of its police department for constitutional violations of minorities, despite the existence of "overwhelming evidence" that such constitutional violations were taking place.  (*Id.* at ¶ 57.)

In particular, Plaintiff alleges that the SPD, with deliberate indifference to Plaintiff's rights, ignored reports of excessive force prepared by the Citizens' Review Board ("CRB"), which Plaintiff claims (again upon information and belief) details "substantiated findings" of constitutional violations perpetrated by members of the SPD on "numerous occasions." (*Id*. at ¶¶ 57-60.) Finally, Plaintiff alleges it is the *de facto* policy of the SPD to tolerate acts of excessive force, particularly when such force is used against members of the African American Community. (*Id.* at ¶ 60.)

### B. Parties' Briefing on Defendants' Motion

#### 1. Defendants' Memorandum of Law

Addressing Plaintiff's claims out of order in their memorandum of law, Defendants argue that, with respect to Plaintiff's third claim, his Complaint fails to allege facts plausibly suggesting a basis for municipal liability against Defendant City of Syracuse. (Dkt. No. 13, Attach. 2 [Defs.' Mem. of Law].) More specifically, Defendants argue that Plaintiff's Complaint alleges only conclusorily that the Syracuse Police Department routinely violated the constitutional rights of minorities between approximately 2012 through September 2016, without citing even one such judicially established incident. (*Id*. at 10-14.) Indeed, Defendants argue, the allegations that Plaintiff asserts in support of this basis for municipal liability have been repeatedly asserted, and rejected, in other lawsuits in this District. (*Id*. at 11-12.) Moreover, Defendants argue, the alternative theory of municipal liability that Plaintiff relies on (i.e., a failure to discipline) is also supported by only conclusory factual allegations, without any specification to such facts as the number of complaints, the dates of those complaints, how many those complaints either resulted in injuries or were substantiated, and the nature of those

3

complaints. (*Id.* at 14-18.) Without these facts, argue Defendants, the Complaint's allegations cannot plausibly suggest that there was a pattern of deliberate indifference by the City to the use of excessive force. (*Id.* at 17-18.) (*Id.* at 10-15.)

With respect to Plaintiff's first claim, Defendants argue that Plaintiff has failed to allege facts plausibly suggesting the personal involvement of the Defendant Police Officers and Defendant Procopio in the constitutional violations alleged. (*Id*. at 18.) In particular, Defendants argue that Plaintiff has failed to plead some "tangible connection" between the alleged excessive force claim and the individual Defendants. (*Id*. at 18-19.) Rather, Plaintiff's Complaint contains generic allegations that all of the Defendants (collectively) were responsible for the complained-of conduct (i.e., the punching and pepper-spraying of Plaintiff during his arrest, and the pre-colonoscopy physical restraint of Plaintiff in the hospital). (*Id*. at 19-20.)

Finally, with respect to Plaintiff's second claim, Defendants argue that, because Plaintiff has alleged that all officers were direct participants in the use of excessive force, he cannot simultaneously proceed with a failure-to-intervene claim against them. (*Id*. at 17.) Specifically, Defendants argue that, because a defendant may not be held liable both for using excessive force and for failing to prevent the use of excessive force, Plaintiff cannot maintain both his excessive force and failure-to-intervene claims against them. (*Id*.)

## 2.    Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendants' motion, Plaintiff makes three arguments. (Dkt. No. 15 [Plf.'s Opp'n Mem. of Law].) Addressing the claims in the same order as do Defendants, Plaintiff argues that his third claim states a viable claim for municipal liability against Defendant City of Syracuse because his Complaint alleges facts plausibly suggesting that the practice of

tolerating similar constitutional violations against minorities (specifically, uses of excessive force, malicious prosecutions and denials of fair trials) was so consistent and widespread between approximately 2012 through September 2016 that, although not expressly authorized, constituted a custom or usage of which a supervising policy-maker must have been aware. (*Id.* at 5-7.)  In any event, he argues that, even in the absence of such a consistent and widespread practice, his Complaint alleges facts plausibly suggesting a failure by policymakers (despite frequent complaints during the above-referenced time period) to provide adequate training or supervision to (or discipline of) subordinates to such an extent that it amounted to deliberate indifference to the rights of those who came into contact with the municipal employees (such as Plaintiff).  (*Id.* at 6-8.)  With regard to this latter means of municipal liability (i.e., the failure to train), Plaintiff relies on a recent ruling by U.S. District Judge David N. Hurd, in the case of *Dixon v. City of Syracuse*, 20-CV-0381, 493 F. Supp. 3d 30 (N.D.N.Y. Oct. 3, 2020) (Hurd, J.), finding that a plaintiff had adequately pled municipal liability in similar circumstances due to "Syracuse's control of access to its training processes and any specific instances of officer misconduct or disciplinary measures . . . ," and finding that "given the gravity of plaintiff's allegations, the benefit of the doubt should be resolved in a nonmovant plaintiff's favor."  (*Id.* at 8.)

With respect to Plaintiff's first claim, he argues that he has stated a claim for excessive force against the four individual Defendants because he has alleged the identity of these individuals, their presence at the scene of the arrest, their presence at the hospital, and the actions they took (i.e, punching and pepper-spraying him at the scene of the arrest, and the pre-colonoscopy physical restraint of him at the hospital).  (*Id.* at 9-10.)  Plaintiff argues that the

procedural posture of this case has not provided an opportunity for him to allege each officers'
individual actions with specificity, which will ultimately be uncovered in discovery. (*Id.*)

Third, although Plaintiff acknowledges that Defendants may not be held liable for both
the use of excessive force and the failure to prevent it, he is nevertheless permitted to plead
alternate theories. (*Id.* at 10.) Citing the Federal Rules of Civil Procedure as well as recent
decisions by New York federal district courts, including this Court, Plaintiff argues that he
should be afforded the flexibility to plead as many claims as he has, regardless of consistency.
(*Id.* at 11.) Therefore, Plaintiff argues that his failure-to-intervene claims should not be
dismissed by the Court. (*Id.*)

### 3.    Defendants' Reply Memorandum of Law

Generally, in their reply, Defendants make three arguments. (*See generally* Dkt. No. 16
[Defs.' Reply Memo. of Law].) First, Defendants argue that Plaintiff ineffectively points to
public policy concerns in an attempt to save his inadequately pled *Monell* claim. (*Id.*) In
particular, Defendants argue that Plaintiff's reliance on two public policy concerns described by
Judge Hurd in *Dixon v. City of Syracuse* are not applicable to the current case because the factual
allegations in *Dixon* were made with far more specificity than were the factual allegations in the
Complaint in this action. (*Id.* at 6-7.) Defendants also argue that Plaintiff's failure to
meaningfully oppose their argument that Plaintiff's Complaint lacks the requisite facts needed to
overcome a motion to dismiss "essentially concedes" that Plaintiff has failed to adequately plead
a *Monell* claim. (*Id.* at 8.)

Second, Defendants argue that Plaintiff fails to rebut Defendants' argument that an
officer's personal involvement is a prerequisite to an award of damages. (*Id.*) More specifically,

they argue that, contrary to Plaintiff's suggestion, even at the pleading stage, a plaintiff may not simply assert multiple "general allegations" at Defendants without differentiating which Defendant was involved in the alleged unlawful conduct.  (*Id*. at 10.)  Defendants argue that such information about each officer's alleged individual misconduct would have been "discussed in detail" at the CRB Hearing, which was attended by Plaintiff's counsel, and which would have provided Plaintiff the opportunity to use the factual details discussed at the CRB Hearing to draft a legally sufficient Complaint.  (*Id*. at 11.)

Third, Defendants argue that the Court should dismiss Plaintiff's failure-to-intervene claim because it should dismiss his excessive force claim, and his failure-to-intervene claim depends on his excessive force claim).  (*Id*. at 12-13.)  Finally, Defendants argue that the Court should dismiss Plaintiff's failure-to-intervene claim on the alternative ground that it is as factually insufficient as his excessive force claim..  (*Id*. at 13.)

## II.  GOVERNING LEGAL STANDARDS

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).  The Court also notes that motions for judgment on the pleadings pursuant to Rule 12(c) are governed by the same standard applied in motions to dismiss for failure to state a claim under Rule 12(b)(6).  *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

Because such dismissals are often based on the first ground, some elaboration regarding

that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212, n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).[11]

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,*

---

[11]     *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

629 F. Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[22]

---

[22]     *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint,

III.    **ANALYSIS**

    A.    **Whether Plaintiff Has Plead Facts Plausibly Suggesting a *Monell* Claim Against Defendant City of Syracuse**

After careful consideration, the Court answers this question in the negative for the reasons stated in Defendants' memoranda of law.  (Dkt. No. 13, Attach. 2 [Defs.' Memo. of Law]; Dkt. No. 16 [Defs.' Reply Memo. of Law].)  To those reasons, the Court adds the following analysis, which is intended to supplement, and not supplant, Defendants' reasoning.

*Monell* and its progeny seek to balance the government's interest in effective policymaking by its executive officers and the mandate under Section 1983 to hold government actors responsible when a citizen's federally secured civil rights are violated by a municipality's policy, whether it be an official or *de facto* policy established through practice, custom or usage. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-79, (1986).  To establish municipal liability based on the acts of a public official under 42 U.S.C. § 1983, a plaintiff must show that (1) the actions were taken under the color of law, (2) there was a deprivation of a constitutional or statutory right, (3) causation, (4) damage, and (5) that an official policy of the municipality caused the constitutional injury.  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing

---

or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .  However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 [1978]).  A plaintiff can show that an

official policy of the municipality caused the constitutional injury by pleading the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions
> taken by government officials responsible for establishing the municipal
> policies that caused the particular deprivation in question; (3) a practice so
> consistent and widespread that, although not expressly authorized,
> constitutes a custom or usage of which a supervising policy-maker must
> have been aware; or (4) a failure by policymakers to provide adequate
> training or supervision to subordinates to such an extent that it amounts to
> deliberate indifference to the rights of those who come into contact with
> the municipal employees.

*Cowan v. City of Mount Vernon*, 95 F. Supp. 3d 624, 637 (S.D.N.Y. 2015) (internal quotation

marks omitted) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 [S.D.N.Y.

2010]).

The Court notes that "*Monell* does not create a stand-alone cause of action under which a

plaintiff may sue over a governmental policy, regardless of whether he suffered the infliction of

a tort resulting from the policy."  *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013).  Rather,

to establish municipal liability a plaintiff must demonstrate that (1) he "suffered a tort in

violation of federal law committed by the municipal actors," and (2) "that their commission of

the tort resulted from a custom or policy of the municipality."  *Askins*, 727 F.3d at 253 (citing

*Monell*, 436 U.S. at 690-91).

In this case, Plaintiff attempts to establish municipal liability through the third and fourth

avenues described above (i.e., a consistent and widespread practice constituting a custom or

usage, and a failure to discipline).  With regard to the former avenue, the Court finds that the

Complaint fails to allege facts plausibly suggesting sufficient acts to constitute a custom or usage

of violating the Fourth Amendment right in question in this case (i.e., the right to be free from

12

excessive force).  Rather, the Complaint alleges merely that "numerous" violations (of the constitutional right against excessive force, false arrest and the receipt of a fair trial) occurred during a six year period against unidentified minorities by unidentified officers.  For the sake of brevity, the Court will not linger on the dissimilarity between a violation of the right against excessive force and a violation of the right against false arrest and the right to receive a fair trial. More important is the lack of facts plausibly suggesting how many (if any) of the complaints alleging the violations were found to be substantiated, when they occurred and under what circumstances.  Fair notice demands such factual allegations before discovery may begin on this claim.  *See Turner v. City of New York*, 17-CV-8563, 2018 WL 2727889, at *4 (S.D.N.Y. June 6, 2018) (rejecting plaintiff's references to previous complaints as insufficient to state a claim for relief because plaintiff failed to state any factual allegations regarding the other complaints and failed to describe or explain the similarities between the previous complaints and the incident giving rise to the lawsuit).

With regard to the latter avenue of establishing municipal liability (i.e., the failure to discipline), the Court finds that the Complaint fails to allege facts plausibly suggesting a failure by policymakers to provide adequate training to or supervision of subordinates to such an extent that it amounts to deliberate indifference to the rights of those who came into contact with those subordinates.  Rather, Plaintiff's Complaint alleges only "upon information belief" that Defendant City of Syracuse failed to discipline members of its police department for civil rights violations against minorities despite "substantiated findings" by the CRB that such violations had taken place on "numerous" occasions.  (Dkt. No. 1, at ¶ 57.)  Setting aside the failure to allege the number, frequency and nature of the complaints, Plaintiff has not alleged how many

13

findings were rendered, the frequency of those findings, and whether the findings concerned the use of excessive force or some other civil rights violation. *See Hicks v. City of Syracuse,* 17-CV-0475, 2018 WL 6308653, at *5 (N.D.N.Y. Dec. 3, 2018) (McAvoy, J.) (dismissing the plaintiff's *Monell* claim under the *de facto* policy and failure to discipline theories for failing to specify how many complaints were filed, how frequently such complaints were filed, whether the complaints concerned the use of excessive force, whether the complaints resulted in findings against officers for the use of excessive force, or whether the allegations in the complaints were such that the defendants should have, but failed to, conduct further investigations). Without supporting factual allegations, alleged inadequate police training cannot be justifiably considered a "city policy" giving rise to municipal liability. *See City of Canton v. Harris,* 489 U.S. 378. 390 (1989) (holding that a claim for municipal liability cannot be satisfied by "merely alleging" that the existing training program represents a policy for which the city is responsible). Furthermore, based upon "upon information and belief" is an insufficient legal conclusion that cannot overcome Plaintiff's burden to allege facts plausibly suggesting a basis for imposing municipal liability. *See Citizens United v. Scneiderman*, 882 F.3d 374, 384 (2d Cir. 2018) ("A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory.").

For all of these reasons, the Court finds that Plaintiff's claim against Defendant City of Syracuse for municipal liability must be dismissed.

**B.** **Whether Plaintiff Has Pled Facts Plausibly Suggesting an Excessive Force and/or a Failure-to-Intervene Claim Against the Individual Defendants**

After careful consideration, the Court answers this question in the negative in part and the affirmative in part for the reasons stated below. With regard to each question, the Court

separates its analysis into two parts, regarding Defendant Fiorini on the one hand, and regarding the remaining individual Defendants (i.e., Abraham, Kittle, and Procopio) on the other hand.

### 1.    Claim of Excessive Force

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013.)  To show personal involvement, a plaintiff must show "'that each Government-official defendant, through the official's own actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).  A plaintiff "must therefore establish that [the defendant] violated the Eighth Amendment by [the defendant's] own conduct, not by reason of [the defendant's] supervision of others who committed the violation." *Tangreti*, 983 F.3d at 619.

Beginning with Plaintiff's excessive-force claim against Defendant Fiorini, the Court finds that Plaintiff has alleged facts plausibly suggesting that Defendant Fiorini was personally involved in both alleged uses of excessive force (i.e., the use at the traffic stop and the use at the hospital).  In particular, Plaintiff alleges that Defendant Fiorini was present during the use of excessive force at the traffic stop, and that Defendant Fiorini was one of the individuals who "constrained" him and "administered a sedative drug against his wishes" while at the hospital. (Dkt. No. 1, at ¶¶ 13-15, 29.)  Granted, Defendant Fiorini's mere presence at the traffic stop does not necessarily mean he used excessive force against Plaintiff (as opposed to failing to intervene in that use of force).  However, it is sufficient to plausibly suggest that he did so.  *See Green v. Garcia*, 18-CV-1745, 2020 WL 1467359, at *5 (S.D.N.Y. Mar. 25, 2020) (holding that, if the

15

plaintiff were to state the names of each person present during the assault, and that the defendants either directly participated in the excessive force or failed to intervene, such actions would be sufficient to allege personal involvement).

Turning to Plaintiff's excessive-force claim against Defendants Abraham, Kittle, and Proccopio, the Court finds that Plaintiff's Complaint fails to plausibly allege that these three individual Defendants were personally involved in both alleged uses of excessive force (i.e., the use at the traffic stop and the use at the hospital).  Plaintiff's Complaint alleges that officers from the Gang Violence Task Force conducted a traffic stop against him, that they unnecessarily punched and pepper-sprayed him during his arrest there, and that (albeit upon Plaintiff's information and belief) Defendants Abraham, Kittle and Proccopio were members of that Gang Violence Task Force.  (Dkt. No. 1, at ¶¶ 11, 14-15.)  Similarly, Plaintiff's Complaint alleges that "several of the defendant [sic]" were present at the hospital before his colonoscopy, when they both "constrained" him and "administered a sedative drug against his wishes."  (*Id*. at ¶ 29.)

With regard to the incident at the traffic stop, the Court begins by observing that it does not place much reliance on the fact that Plaintiff's allegations against Defendants Abraham, Kittle and Proccopio do not identify which of these three individuals punched and pepper-sprayed him, and which failed to intervene in that punching and pepper-spraying.  During an attack, a victim may be relieved of the duty to perceive such identities.  *See Coley v. Shadid*, 89 F. Supp. 3d 518, 524 (E.D.N.Y. 2015) ("I do not hold that plaintiff had an obligation to identify which police officer kicked him and which police officers failed to intervene. It would be too much to require a citizen subjected to a police attack to separately identify the role of each

16

defendant—he is, after all, under attack.").[1]

More important is the fact that Plaintiff's factual allegations regarding the traffic stop do not expressly identify any of these three individuals by name.  (Dkt. No. 1, at ¶¶ 14-15.)  Rather, they refer to "officers" who were members of the Gang Violence Task Force.  (*Id*. at ¶¶ 11, 14.)  Furthermore, the only way the Complaint alleges facts plausibly suggesting the personal involvement of these three individuals in the use of excessive force at the traffic stop is by alleging—"upon information and belief" no less—that these three individuals were *some of* the members of the Gang Violence Task Force.  (*Id*. at ¶ 11.)  As a result, two inferences must be drawn for Plaintiff and the reader of the Complaint to conclude that it was these three individuals (in addition to Defendant Fiorini) who used excessive force against him at the traffic stop.

The first inference is that these three individuals were indeed members of the Gang Task Force.  As the Court has explained, this membership is alleged only "upon information and belief."  This is insufficient.  *See Citizens United v. Scneiderman*, 882 F.3d 374, 384 (2d Cir. 2018) ("A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory."); *Whiteside v. Hover-Davis, Inc.*, 19-CV-6026, 2020 WL 979785, at *6 (W.D.N.Y. Feb. 28, 2020) ("Bare or conclusory allegations, or allegations made only 'upon information and belief,' . . . are not sufficient to state a plausible claim."); *Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 13 (S.D.N.Y. 2020) ("When

---

[1]    Nor does the Court place much reliance on the apparent implausibility of the allegation that Defendant Proccopio, a supervising member of the Gang Violence Task Force, was one of the individuals who happened to stop Plaintiff during a routine traffic stop for failing to signal for a turn in a timely manner.  (Dkt. No. 1, at ¶ 11.)  The Court notes that it has found cases in which a lieutenant was present during a traffic stop.  *See, e.g., United States v. Jenkins*, 15-CR-0142, 2018 WL 324901, at *2-3 (W.D.N.Y. Jan. 8, 2018); *United States v. Hunt*, 18-CR-0081, 2019 WL 8501434, at *3 (W.D.N.Y. Nov. 18, 2019).

allegations are made upon information and belief, the plaintiff must support them by offering facts upon which that belief is founded.").

The second inference is that (even if these three individuals were indeed members of the Gang Task Force) they were in fact the three particular members of the Task Force (other than Defendant Fiorini) who injured Plaintiff at the traffic stop.  However, this inference is speculative, rather than plausible.[2]  It must be remembered that the Complaint does not allege that these three individuals were the only members of the Gang Violence Task Force.  (Dkt. No. 1, at ¶ 11 [alleging that the Task Force "includes" these three individuals, not that it "consists of" them].)  There could be a dozen or more members of the Task Force, for all Plaintiff and the reader of the Complaint knows.  Indeed, based on prior case law, there appears to be more than a dozen such members.  *See Livingston v. Henderson*, 15-CV-0631, 2019 WL 1427689, at *3 (N.D.N.Y. March 29, 2019) ("According to Ryan, at approximately 11:50 a.m., fifteen members of the Syracuse Police Department Special Investigations Division, Gang Task Force, and Crime Reduction Team executed search warrants on Plaintiff, and the residence of 1034 State Fair Boulevard.").

With regard to the incident at the hospital, the Court renders the same finding for the same reasons.  Indeed, the Court's finding regarding the incident at the hospital is further strengthened by the fact that, unlike the alleged use of excessive force at the traffic stop, the alleged use of excessive force at the hospital was effected by only "*several* of the defendant[s]." (Dkt. No. 1, at ¶ 29 [emphasis added].)  Which of the three individuals Plaintiff is referring to

---

[2]     Of course, a title of employment, by itself, is insufficient to allege the personal involvement of a defendant. *Delee v. Hannigan*, 729 F. App'x. 25, 31 (2d Cir. 2018); *see also Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam) (stating that the plaintiff's claim for monetary damages "requires a showing of more than linkage in the prison chain of command.").

the reader of the Complaint can only speculate.

For all of these reasons, Plaintiff's excessive force claim against Defendant Fiorini, survives Defendants' motion, but Plaintiff's excessive force claim against Defendants Abraham, Kittle, and Proccopio is dismissed.

### 2.      Claim of Failure to Intervene

Turning to Plaintiff's failure-to-intervene claim against Defendant Fiorini, the Court finds that he has plead facts plausibly suggesting that Defendant Fiorini failed to intervene during alleged use of excessive force during the traffic stop;[3] however, the Court renders a contrary finding regarding the alleged use of excessive force in the hospital.  (Dkt. No. 1, at ¶¶ 13-16.)  Because Plaintiff specifically alleged Defendant Fiorini "constrained" him and "administered a sedative drug against his wishes" while at the hospital (Dkt. No. 1, at ¶ 29), it logically follows that Defendant Fiorini cannot simultaneously have participated in the use of excessive force and failed to intervene to stop the excessive force.  *See Buchy v. City of White Plains*, 14-CV-1806, 2015 WL 8207492, at *3 (S.D.N.Y. Dec. 7, 2015) ("When a law enforcement officer 'is a direct participant in the allegedly excessive use of force, the failure to intervene theory of liability is inapplicable.'") (quoting *Ceullar v. Love*, 11-CV-3632, 2014 WL 1486458, at *8 [S.D.N.Y. Apr. 11, 2014]).

Regarding Plaintiff's failure-to-intervene claim against Defendants Abraham, Kittle, and

---

[3]      The Court notes that, at the current stage of litigation, Plaintiff is permitted to pursue alternative theories of the case.  *See Cohen v. Schroeder*, 248 F. Supp. 3d 511, 520 (S.D.N.Y. 2017) ("[A] plaintiff is generally permitted to plead and prove his or her case on alternative and sometimes inconsistent theories of liability.") (quotation omitted).  However, should Plaintiff prevail at trial, he would be able to recover on only one theory of liability.  *See Gerber v. MTC Electronic Techs. Co., Ltd.*, 329 F.3d 297, 303 (holding the Second Circuit's "one satisfaction" rule prohibits a plaintiff from recovering more than one satisfaction for each injury).

Proccoppio, for the same reasons that the Court finds that Plaintiff has failed to allege that these three individual Defendants were present during (and participated in) the two alleged uses of excessive force, the Court finds he has failed to plead facts plausibly suggesting they were present for (and participated in) the failures to intervene in those two allege uses of excessive force.

For all of these reasons, Plaintiff's failure-to-intervene claim against Defendant Fiorini arising from the incident at the hospital are dismissed, while Plaintiff's failure-to-intervene claim against Defendant Fiorini arising from the incident at the traffic stop survives Defendants' motion to dismiss.[4]  Moreover, Plaintiff's failure-to-intervene claim against Defendants Abraham, Kittle, and Proccoppio are dismissed.

### C.    Whether the Dismissals Should Be with or Without Prejudice

In the Second Circuit, the dismissal of an action for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) is viewed as an adjudication "on the merits" of the action.  *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996) ("[A] dismissal under Rule 12(b)(6) is a dismissal on the merits of the action–a determination that the facts alleged in the complaint fail to state a claim upon which relief can be granted."); *accord, Civic Ctr. Motors, Ltd. v. Mason St. Import Cars, Ltd.*, 387 F. Supp.2d 378, 380 (S.D.N.Y. 2005); *Nexans Wires S.A. v. Sark-USA, Inc.*, 319 F. Supp.2d 468, 470 (S.D.N.Y. 2004); *Martens v. Smith Barney, Inc.*, 190 F.R.D. 134, 137 (S.D.N.Y. 1999).

As a result, a district court possesses the authority to dismiss an action with prejudice for

---

[4]    The Court notes that Plaintiff's Complaint asserts one claim of excessive force and one claim of failure-to-intervene, despite alleging two separate incidents of excessive force and failing to intervene (i.e., the incident at the traffic stop and the incident at the hospital).  (*See generally* Dkt. No. 1.)

failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).
*See, e.g., Spain v. Ball*, 928 F.2d 61, 62 (2d Cir. 1991) ("In his complaint, Spain alleged that he
was denied his commission because he is a white male.  Observing that the complaint did not
allege facts supporting a claim of race or gender discrimination, the district court dismissed
Spain's Title VII claim but granted him leave to replead.  We believe the Title VII claim should
have been dismissed with prejudice. . . .  Accordingly, the dismissal of Spain's complaint is
affirmed, and the judgment modified only insofar as it granted Spain leave to replead his Title
VII claim."); *Shockley v. Vermont State Colleges*, 793 F.2d 478, 480-81 (2d Cir. 1986)
("Appellant's pendent state contract claims were dismissed without prejudice while appellant's
cause of action under Section 1983 was dismissed for failure to state a claim*."); Winters v. Alza
Corp.*, 690 F. Supp.2d 350, 357 (S.D.N.Y. 2010) ("A dismissal pursuant to Rule 12(b)(6) is, of
course, a dismissal with prejudice."); *Martens*, 190 F.R.D. at 137 ("Granting a motion under
12(b)(6) would dismiss a claim with preclusive effect . . . .").

This authority is especially present "[w]here it appears that granting leave to amend is
unlikely to be productive."  *See Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993)
("Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an
abuse of discretion to deny leave to amend.") (citations omitted), *accord, Brown v. Peters*, 95-
CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not
grant leave to amend where it appears that amendment would prove to be unproductive or
futile.") (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial not abuse
of discretion where amendment would be futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir.
2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure

it.  Repleading would thus be futile.  Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990) ("[W]here . . . there is no merit in the proposed amendments, leave to amend should be denied").

Here, there are two facts that lead the Court to suspect that granting leave to amend would be unlikely to be productive with regard to Plaintiff's deficient claims against Defendants City of Syracuse, Abraham, Kittle, and Proccopio.  (The Court has no such reservation with regard to Plaintiff's deficient claim against Defendant Fiorini.)  The first fact is that, despite the detail of Plaintiff's 11-page typed Complaint (prepared by counsel), the Complaint conspicuously fails to allege the facts missing from his deficient claims against City of Syracuse, Defendants Abraham, Kittle, and Proccopio.  The second fact is that, in his opposition memorandum of law, Plaintiff never even suggests that any deficient claims might be able to be corrected in an Amended Complaint.  (*See generally* Dkt. No. 15.)  However, the Court is mindful that Plaintiff is a civil rights litigant (albeit not a *pro se* one) who is entitled to special solicitude,[5] and that the pleading deficiencies in question might be the result of the inadvertent verbiage of counsel, rather than the lack of personal knowledge of Plaintiff and/or the strictures of Fed. R. Civ. P. 11(b).

---

[5]      *See Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995) (explaining, with regard to a complaint prepared by counsel, that the liberal pleading standard set forth in Fed. R. Civ. P. 12[b][6] "is applied with greater force where the plaintiff alleges civil rights violations"); *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (explaining that the liberal pleading standard set forth in Fed. R. Civ. P. 12[b][6] "applies with greater force when the complaint is submitted pro se *or* the plaintiff alleges civil rights violations") (emphasis added).

For these reasons, the Court is inclined to grant Plaintiff the ability (upon satisfaction of the requirements of Fed. R. Civ. P. 15 and whatever non-dispositive-motion deadline is set in the future Scheduling Order in this action) to amend the above-referenced deficient claims during the pendency of this action.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion for judgment on the pleadings (Dkt. No. 13) is **<u>GRANTED</u> in part** and **<u>DENIED</u> in part**; and it is further

**ORDERED** that Plaintiff's claim against Defendant Fiorini arising from the failure to intervene during the alleged use of excessive force while at the hospital (Dkt. No. 13) is **<u>DISMISSED</u> with prejudice**; and it is further

**ORDERED** that Plaintiff's claim of municipal liability against Defendant City of Syracuse (Dkt. No. 13), and his claims of excessive force and failure to intervene against Defendants Abraham, Kittle, and Proccopio (Dkt. No. 13), are **<u>DISMISSED</u> without prejudice** to renewal in this action upon the filing of a successful motion to amend pursuant to Fed. R. Civ. P. 15; and it is further

**ORDERED** that Plaintiff's claims against Defendant Fiorini arising from the alleged uses of excessive force against him during the traffic stop and while at the hospital (Dkt. No. 13), and Plaintiff's claim against Defendant Fiorini arising from the alleged failure to intervene during the alleged use of excessive force during traffic stop (Dkt. No. 13), **<u>SURVIVE</u>** Defendants' motion.

Dated: August 20, 2021
       Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge

23